## Lafferty v. Supreme Council Catholic Mutual Benefit Association, Appellant.

*Beneficial associations—Insurance companies—Distinction—By-laws of society—Death benefits—Failure to include by-laws in certificate—Evidence—Unauthorized circular by officer—Acts of May 11, 1881, P. L. 20, and April 6, 1893, P. L. 7—Case for jury.*

1. A controlling test as to whether an organization is a beneficial association or an insurance company is whether the organization comes within the definition of the Act of April 6, 1893, P. L. 7, which declares that a fraternal beneficial association is a corporation, society or voluntary association organized and carried on for the sole benefit of its members and their beneficiaries and not for profit, "and in which the payment of death benefits shall be to families, heirs, blood relatives, affianced husband or affianced wife of, or to persons dependent upon the member."

2. A society organized as a social institution with a provision for insurance not as a means of profit but in the exercise of a benevolent and fraternal purpose, and governed through a branch system with a form of initiation, requiring that an applicant can be admitted to membership only after investigation and report by the board of trustees of the branch, and a favorable ballot by the members present at a regular meeting, and requiring that the

designation of beneficiaries be limited to relatives or dependents of the member, or to a charitable institution of which he may be an inmate, and stipulating that no member may belong to two branches of the association at the same time, is a beneficial association and not an insurance company.

3. The Act of May 11, 1881, P. L. 20, providing that where an insurance policy refers to the constitution and by-laws of the insurer as forming part of the insurance contract, such constitution and by-laws shall not be admissible in evidence unless a copy thereof be attached to the policy, applies to insurance companies and not to beneficial associations.

4. In an action against such organization by the wife of a member, the statement of claim averred that plaintiff's husband had left home and had not been heard of for a period of more than seven years, and that the presumption of his death had therefore arisen. The by-laws of the association provided that "no time of absence or disappearance of a member, without proof of actual death, shall entitle his beneficiary, family or next of kin to receive any part or portion of the said fund," except only where the disappearance had been for a period of twenty years. The trial judge excluded the application for membership, the medical certificate and the constitution and by-laws of the association on the ground that these papers were not printed in or attached to the certificate as required by the Act of May 11, 1881, P. L. 20, relating to insurance companies. *Held,* (1) the defendant society was a beneficial association and not an insurance company, (2) the evidence referred to was improperly excluded, and (3) the court erred in giving binding instructions for the plaintiff.

5. In such case a circular issued by the grand secretary of the defendant without the proper authority of the organization, may be admissible as tending to modify or contradict some of the testimony of that official, but is not admissible as affecting the purpose or character of the defendant.

Ogle v. Barron, 247 Pa. 19, followed; Marcus v. Heralds of Liberty, 241 Pa. 429, distinguished.

Argued Oct. 17, 1917. Appeal, No. 175, Oct. T., 1917, by defendant, from judgment of C. P. Allegheny Co., July T., 1916, No. 305, on directed verdict for plaintiff in case of Katherine Lafferty v. Supreme Council Catholic Mutual Benefit Association, a Corporation. Before BROWN, C. J., POTTER, MOSCHZISKER, FRAZER and WALLING, JJ. Reversed.

Assumpsit on death benefit certificate. Before HAY-MAKER, J.

The facts appear by the opinion of the Supreme Court.

Directed verdict for plaintiff for $2,340 and judgment thereon. Defendant appealed.

*Errors assigned,* among others, were in refusing defendant's offer in evidence of membership application, medical examiner's certificate and constitution and by-laws of the defendant association (1), and directing verdict for plaintiff (2).

*A. V. D. Watterson,* for appellant.—The defendant is a beneficial association and not an insurance company: Marcus v. Heralds of Liberty, 241 Pa. 429; Ogle v. Barron, 247 Pa. 19; Heasly v. Heasly, 191 Pa. 539; Fischer v. American Legion of Honor, 168 Pa. 279; Taylor v. Order of Sparta, 254 Pa. 556.

The presumption of death arising from seven years' absence is rebuttable: Keech v. Rinehart, 10 Pa. 240.

*George Y. Meyer,* for appellee.—The death benefit certificate in the present case is in terms an insurance policy: Helmbold v. Independent Order Puritans, 61 Pa. Superior Ct. 164.

The Act of May 11, 1881, P. L. 20, relating to life and fire insurance policies is applicable.

The defendant is engaged in the carrying on of the work of a life insurance company and is to be classed as such: Commonwealth v. Equitable Beneficial Association, 6 Dauphin Co. 31; Commonwealth v. Keystone Benefit Association, 171 Pa. 465; Berry v. Knights Templars' & Masons' Life Indemnity Co., 46 Fed. Repr. 439; National Union v. Marlow, 74 Fed. Repr. 775; Taylor v. Order of Sparta, 254 Pa. 556; Marcus v. Heralds of Liberty, 241 Pa. 429; Lane v. American Relief Association, 25 Pa. C. C. 129.

Absence from home for a period of seven years without

being heard from gives rise to a presumption of death:
Bradley v. Bradley, 4 Wharton 173; Burr v. Sim et al.,
4 Wharton 150; Freeman's Est., 227 Pa. 154.

OPINION BY MR. JUSTICE POTTER, January 7, 1918:

In this action of assumpsit Katherine Lafferty sought
to recover from the Supreme Council Catholic Mutual
Benefit Association the sum of $2,000, with interest, be-
ing the amount of a certificate issued January 6, 1896,
to John M. Lafferty, and payable upon his death to his
wife, the plaintiff. In her statement of claim she
averred that Lafferty left his home in the City of Pitts-
burgh on February 15, 1907, and has not been seen or
heard of since, though extensive search and diligent in-
quiry has been made for him, and, therefore, the pre-
sumption of his death arose on February 15, 1914, at
which time he was a member in good standing of the as-
sociation.

Defendant admitted that, on February 15, 1914, Laf-
ferty was in good standing, as a member of the associa-
tion, but averred that he was subsequently suspended
from membership, and later expelled, in accordance with
certain provisions of the constitution and by-laws of the
association. It further averred that proof of the actual
death of Lafferty had never been filed with the associa-
tion, and that the certificate in question had been issued
in express terms subject to the laws, rules and regula-
tions of the association, which contained, inter alia, a
provision as follows: "No time of absence or disappear-
ance of a member, without proof of actual death, shall
entitle his beneficiary, family or next of kin, to receive
any part or portion of said fund, except that when a
member has disappeared, and has not been heard from
for twenty years, and when, if living, it appears from
our records that he would be seventy years of age" cer-
tain payments are to be made on specified conditions.

On the trial defendant's counsel offered in evidence
Lafferty's application for membership, the medical cer-

tificate, and the constitution and by-laws of the association. Objection was made to the offer, on the ground that these papers were not printed in or attached to the certificate, and that, therefore, under the Act of May 11, 1881, P. L. 20, they formed no part of the contract and were not admissible in evidence. The objection was sustained, the trial judge holding that the defendant association was a life insurance company, and was not a beneficial association, and that its contract with Lafferty was a policy of life insurance, and was subject to the provisions of the Act of 1881. He refused a point submitted on behalf of defendant requesting binding instructions in its favor, and directed a verdict for plaintiff for the amount of her claim, with interest, amounting to $2,340, which was duly rendered, and, from the judgment entered thereon, defendant has appealed.

The first assignment of error raises the important question in this case, as it complains of the action of the trial judge in excluding the application and the constitution on the ground that defendant is substantially an insurance company, and not a beneficial association. The Act of 1881 applies only to insurance policies, and does not affect certificates of membership in beneficial associations. Two of our late cases, in which the line of distinction has been drawn, are Ogle v. Barron, 247 Pa. 19, and Marcus v. Heralds of Liberty, 241 Pa. 429. In the former case the Royal Arcanum was held to be doing business as a beneficial association and not as an insurance company, and in the latter case it was held that the Heralds of Liberty, while issuing a certificate purporting to be that of a beneficial association, actually carried on an insurance business, and that its contracts were subject to the Act of 1881. In giving the reasons for holding that the Royal Arcanum was a beneficial association as distinguished from a life insurance company, we said, in Ogle v. Barron, 247 Pa. 19, 22, "The charter of the garnishee shows that it is incorporated 'for the purpose of fraternal union, aid to its members and their

dependents, the education, socially, morally and intellectually of its members, assisting the widows and orphans of deceased members, establishing a fund for the relief of sick and distressed members, etc.' The constitution sets forth that the objects of the order are 'to unite fraternally' its members, 'to give all moral and material aid in its power to its members and those dependent upon them,' 'to educate members socially, morally, and intellectually, and to assist the widows and orphans of deceased members, etc.' "'

The act of incorporation, which constitutes the charter of defendant, the Catholic Mutual Benefit Association, provides: "Section 5. The object of this corporation shall be. to improve the moral, mental and social condition of its members, and to educate them in integrity, sobriety and frugality, to endeavor to make them contented with their position in life, and to aid and assist members or their families, in case of death."

The declared objects of the two associations are practically the same, except that defendant undertakes only to aid members or their families in case of death, and not to establish a fund for the relief of sick and distressed members.   In Ogle v. Barron, we further said (p. 22) : "It was shown that the garnishee operates through subordinate councils, and that defendant's husband was a member of such a subordinate council.   Before becoming a member, he was required to undergo investigation as to his qualifications for membership.   He was also required to make certain pledges which related to his future conduct as a member of the council.   These requirements are not consistent with the contention that the garnishee conducted the business of an insurance company, or that it did not maintain itself as a fraternal beneficiary association."

These statements are equally applicable to the present defendant.   It operates through subordinate branches, another name for councils.   Before becoming a member of a branch (by-laws, sec. 175) an applicant must pos-

sess certain qualifications, among which are the following: He must be of good moral character, must be between sixteen and fifty years of age, must be competent to earn a livelihood for himself and family, must have had the smallpox or have been successfully vaccinated, and (Sec. 34) must be a practical Roman Catholic. In order to retain his membership and participate in the beneficiary fund, he must continue to be a practical Catholic and perform his Easter duty. His spiritual .qualifications are to be subject to the decision of his pastor, with the right of appeal to the bishop of the diocese. The section cited (34) expressly states: "No one whose claims to be a practical Catholic such pastor and bishop refuse to endorse can be admitted or retained in this association. This section shall never be altered or amended."

When an application has been made, it is required (Sec. 179) to be read at a regular meeting of the branch, entered on the record and referred to the board of trustees for investigation. They must inquire and report at the next regular meeting of the branches as to the character and fitness of the applicant to become a member. If their report be favorable the applicant is balloted for by secret ballot, and if approved is admitted. If the report of the trustees be unfavorable he is declared rejected, without debate. More than two black balls out of the first ten votes cast and more than one black ball out of any subsequent ten, are sufficient to prevent the election of the applicant. If the applicant is elected (Sec. 181) he must present himself for initiation at a regular meeting of the branch within one month of his election, and is not entitled to any benefit unless he has been duly initiated. Immediately upon his initiation, (Sec. 4) the financial secretary of the branch is required to forward the new member's application, with a report of his initiation to the grand secretary of the association, who must enter his name upon the roll of the branch in his office. Members (Secs. 218, 220, 235) may be sus-

pended or expelled, after trial, for various causes other
than the nonpayment of monthly beneficiary payments
or branch dues. Every applicant (Sec. 177) must be
recommended by two members in good standing in the
branch to which his application is made, and have the
statement of his pastor that he is a practical Catholic.
A person (Sec. 176) cannot hold membership in two
branches at one and the same time, nor can a resident of
a city, town or village, where there is a branch of the as-
sociation, be initiated into a branch in any other city,
town or village, without the written consent of the pas-
tor of his own parish.

All these requirements are consistent with the claim
of defendant to be a beneficiary association, but they are
not in keeping with the manner in which an insurance
company is managed or controlled. This is particularly
true with respect to the avowed purpose of the associa-
tion to improve the moral, mental and social condition
of its members, and to educate them in integrity, so-
briety and frugality, and its endeavor to make them con-
tented with their position in life. There was no evi-
dence to show that the affairs of the association were
conducted otherwise than in the manner prescribed by
the constitution and by-laws, and the testimony of the
officers, at the trial, indicated that the provisions of the
constitution and by-laws were observed in practice by
the supreme council and the subordinate branches. This
was quite in contrast with the methods and the manage-
ment disclosed in Marcus v. Heralds of Liberty, 241 Pa.
429, where it was determined that the defendant was do-
ing business as an insurance company. Mr. Justice EL-
KIN there found (p. 435) : "After a careful reading
of all the evidence presented by this record we discover
that but little attention is paid to the social, fraternal
and benevolent features of the order; but, on the other
hand, the plan of organization, the method of soliciting
business, the emphasizing of the advantage of being in-
sured, the minimizing and in large areas the elimination

of the lodge system and numerous other like features, all point to but one end; which is that, under the guise of a beneficial association, defendant is doing an insurance business. No matter by what name called the result is the same."

In the case at bar the facts do not justify any such conclusion. In the opinion in Marcus v. Heralds of Liberty, 241 Pa. 429, much stress was also laid on the fact that the officials of the order were paid large salaries, and that premiums were paid for bringing in new business. In the present case, it appears from the evidence that four officers of the defendant association receive modest salaries, from $500 to $3,000 a year, and that certain bonuses and expenses are paid for organizing new branches. The association pays no commission for bringing in new members.

After careful consideration of all the evidence we are clear that the facts of the present case bring it within the principle of the decision in Ogle v. Barron, supra, and that the defendant is a beneficial association. In discussing a similar question in Fischer v. American Legion of Honor, 168 Pa. 279, Mr. Justice FELL said (p. 285): "There is a material and fundamental distinction between philanthropic or beneficial associations, which issue benefit certificates to their members, and life insurance companies, which was pointed out in Commonwealth v. Equitable Beneficial Association, 137 Pa. 412, and has since been recognized in Dickinson v. A. O. U. W., 159 Pa. 258, and in Lithgow v. Supreme Tent, Etc., 165 Pa. 292. It appears from the charter and by-laws that the association defendant was organized for social, moral and intellectual purposes and for the relief of sick and distressed members. Insurance is not its only nor its primary object. It limits the persons and classes of persons who may be named as beneficiaries to 'the family, orphans or dependents' and provides that in the event of the failure of all such persons or classes of persons the sum due shall revert to the order. The amount

secured by the certificate is subject to deductions for relief benefits paid in case of sickness or disability to the member and for his funeral expenses. Where the beneficiary has died the member may name another. These provisions are in entire harmony with the object of the order as a fraternal and beneficial organization, and they are entirely incompatible with the vesting of an interest in the fund in the beneficiary before the death of a member. Such a construction would in many cases, by giving the fund to the legal representatives of the beneficiary, divert it entirely from the purpose intended by the member and for which the organization was formed." The decision in the case just cited was based largely upon the limitations placed upon the persons who might be named as beneficiaries, coupled with a provision that, in the event of the failure of all such persons, the sum due shall revert to the order. Similar limitations and provisions appear in the by-laws of the defendant here. Such provisions would, of course, have no proper place in a contract of life insurance. It will also be noted that in the Act of April 6, 1893, P. L. 7, a fraternal beneficial association is defined as a corporation, society or voluntary association, organized and carried on for the sole benefit of its members and their beneficiaries and not for profit, "and in which the payment of death benefits shall be to families, heirs, blood relatives, affianced husband or affianced wife of, or to persons dependent upon the member." Here again the application of this controlling test makes it clear that the defendant is properly to be classed as a beneficial association.

In the fifth assignment of error, complaint is made of the admission in evidence, against objection, of a circular issued by J. W. Sullivan, grand secretary. The only evidence in regard to the circular was that of Sullivan himself, who testified that it was an advertisement of his own, and not of the corporation, and that he did not have the authority of the supreme council to issue it. The circular may be admissible as tending to modify

or contradict some of the testimony of the witness, Sullivan, but it is not admissible as affecting the purpose or character of the defendant corporation.

To recapitulate, the evidence shows that the defendant is organized as a social institution, with the provision for insurance not as a means of profit, but in the exercise of a benevolent and fraternal purpose. It shows that the association is governed through a branch system with a form of initiation. It further shows that an applicant can be admitted to membership only after investigation and report by the board of trustees of the branch, and a favorable ballot by the members present at a regular meeting, and that the designation of beneficiaries is limited to relatives or dependents of the member, or to a charitable institution of which he may be an inmate. These and other characteristics shown are distinctly those of a beneficial association, and do not comport with the object, purpose, or methods of operation of an insurance company.

The first and second assignments of error are sustained, and the judgment is reversed, with a venire facias de novo.